UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LOU TYLER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3: 09-CV-1488-B |
| § | |
| CITI-RESIDENTIAL LENDING INC., § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (doc. 20). For the reasons discussed below, the Court **GRANTS** the Motion for Summary Judgment.

### I.

### BACKGROUND

Plaintiff Lou Tyler, filed this lawsuit against Citi-Residential Lending, Inc. ("Citi-Residential"), on February 2, 2009 in the 134th Judicial District Court, Dallas County, Texas. Notice of Removal ¶ 1. In Plaintiff's Original Petition, Tyler brought claims for breach of contract and bad faith against Citi Residential Lending, Inc. Pl.'s Orig. Pet. 2. Citi-Residential removed the case to this Court based on diversity jurisdiction. Notice of Removal ¶ 3.

According to Plaintiff's Original Petition, Tyler entered into a refinanced mortgage loan agreement with Ameriquest in or about June, 2004 for approximately $98,000. Pl.'s Orig. Pet. 1–2. Ameriquest transferred the loan servicing rights to Tyler's loan to Citi-Residential in or about September, 2007. Smith Aff. ¶ 2. On or about February 11, 2009, the servicing rights to Tyler's loan were again transferred to American Home Mortgage Servicing, Inc. *Id.* at 4.

Tyler alleges that beginning in October 2007 and continuing throughout the duration of Citi-

Residential's servicing of her loan, Citi-Residential deliberately mishandled her attempts at loan modification. Pl.'s Orig. Pet. 1. In particular, Tyler states Citi-Residential offered her a loan modification agreement over the telephone and in a document in or about December, 2008. *Id.* at 2. According to Tyler, the loan modification agreement included $52,000 in late fees, penalties, and unpaid interest, the original principal of $98,000, and an interest rate of 6%. *Id.* at 2. Tyler also asserts that Citi-Residential offered a second loan modification agreement including $82,000 in late fees, penalties, and unpaid interest, the original principal of $98,000, and an interest rate of 10%.. *Id.* at 2. In addition, Tyler states that Citi-Residential took other inappropriate measures, including repeatedly harassing Plaintiff, threatening foreclosure, mishandling Plaintiff's financial documents, and charging excessive fees. Pl.'s Resp. Br. 2–3. Ultimately, attempts at loan modification and repayment failed, and Tyler's home became subject to foreclosure. Pl.'s Orig. Pet. 3.

As a result, on February 2, 2009, Tyler filed this suit against Citi-Residential alleging breach of contract and bad faith. Pl.'s Orig. Pet. 2. Tyler now seeks equitable relief in the form of the deed to her house free and clear of all mortgages; or in the alternative, a loan modification agreement that dismisses the $82,000 in late fees, penalties, and unpaid interest. *Id.* at 3. Plaintiff also seeks attorneys fees in the amount of $50,000, general damages in the amount of $50,000, unspecified special damages for mental, psychological, and physical trauma, and other costs. *Id.* at 3.

On June 29, 2011, Citi-Residential filed the instant Motion for Summary Judgment (doc. 20). Tyler filed a correspondence on July 28, 2011 (doc. 24) and a response on August 10, 2011 (doc. 25). Citi-Residential filed its reply on August 2, 2011 (doc. 23).

## II.

## LEGAL STANDARDS

A.    *Summary Judgment Standard*

Summary judgment is appropriate when the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the nonmovant bears the burden of proof at trial, the movant need not support its motion with evidence negating the nonmovant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the nonmovant's case. *Id*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the nonmovant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the nonmoving party must go beyond the mere pleadings and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed R. Civ. P. 56(e)); *see Celotex*, 477 U.S. at 324. The evidence presented by the nonmovant must "support each essential element of its claims on which it will bear the burden of proof at trial." *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000) In determining whether a genuine issue exists for trial, the court will view all of

the evidence in the light most favorable to the nonmovant. *Id.*

B. *Pro Se Litigants*

The Court recognizes that Tyler is a *pro se* litigant. In *Bookman v. Shubzda*, 945 F. Supp. 999 (N.D. Tex. 1996), the district court noted that "[a]lthough a *pro se* litigant's response to a motion for summary judgment must be read liberally, she is not, as the party with the burden of proof, excused from the requirement that she set forth specific facts supporting her claim." *Id.* at 1004. While this Court often exercises its discretion in accommodating *pro se* litigants, "[t]here is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to be warrant the court's attention." *Id.* at 1005. With that caveat, the Court now addresses the merits of Citi-Residential's Motion.

### III.

### ANALYSIS

In her complaint, Tyler alleges two claims against Citi-Residential for breach of contract and "bad faith." Pl.'s Orig. Pet. 2. In its Motion for Summary Judgment, Citi-Residential argues that Tyler has provided no evidence a contract existed between the parties, let alone evidence of Citi-Residential's breach of contract. Def.'s Mot. for Summ. J. 7. Citi-Residential also argues that Tyler has provided no evidence that Texas law supports a cause of action for "bad faith" in this context. *Id.* at 8.

A.     *Plaintiff's Breach of Contract Claim*

In reading Tyler's complaint in the most favorable light, Tyler asserts that in or about December 2008 she entered into an oral contract with Citi-Residential over the telephone and this contract was sent to her in a document shortly thereafter. Pl.'s Orig. Pet. 2. Tyler then alleges that Citi-Residential's subsequent actions constituted a breach of that contract. Under Texas law, "[t]he

essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). The elements of written and oral contracts are identical and must be present for the formation of a valid and binding contract. *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App. 2004). The following elements are required for the formation of a contract: 1) an offer; 2) acceptance in strict compliance with the terms of the offer; 3) a meeting of the minds; 4) each party's consent to the terms; and 5) execution and delivery of the contract with the intent that it be mutual and binding. *Id.*

Tyler has presented no evidence of any of the elements of a breach of contract claim. This becomes readily apparent when addressing the first element of a breach of contract claim: the existence of a valid contract. Tyler has failed to produce any documentation, affidavits, deposition testimony, or any other admissible evidence that might establish the existence of the alleged loan modification agreement between her and Citi-Residential. While it is clear that Tyler and Citi-Residential engaged in negotiations related to loan modification, there has been no evidence provided that an agreement was reached between the parties. In fact, it appears the failure to reach an agreement and the breakdown in negotiations is what led to Citi-Residential's initiation of foreclosure procedures and the filing of this case. What Tyler has submitted to this Court is an array of documents including her own personal notes, emails, correspondence with the State's Attorney General's office, and on-line reviews of Citi-Residential. What she has failed to produce, however, is any evidence of the establishment of a contract and its subsequent breach beyond her mere allegations. The dearth of admissible evidence presented by Tyler also destroys the establishment of the other elements for a breach of contract. Her conclusory allegations that an agreement was

reached, violated, and caused her significant harm, without further evidentiary support, are insufficient to survive summary judgment.

*B. Plaintiff's Claim of Bad Faith*

Tyler argues that Defendant acted in bad faith during the course of negotiations that failed to a produce a loan modification agreement she found suitable. The Court finds the claim of bad faith inapplicable in this context. *See generally* Tex. Bus. & Com. Code Ann. § 1.201 (defining bad faith in the commercial context); Tex. Prop. Code Ann. § 92.109 (West 2007)(providing for the claim of bad faith against a landlord for improperly withholding a security deposit); *Southland Lloyds Ins. Co. v. Cantu*, No. 04:09CV705, 2011 WL 1158244 (Tex. App. March 30, 2011)(discussing a claim of bad faith in the insurance context). Tyler has provided no evidence that to demonstrate Citi-Residential acted in bad faith during negotiations, if such a claim were appropriate base on Tyler's allegations.

## IV.

## CONCLUSION

For the foregoing reasons, Citi-Residential's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED.**

SIGNED September 13, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE